# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHAWN HUNLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-11-218-FHS-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Shawn Hunley requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on July 22, 1971, and was thirty-eight years old at the time of the administrative hearing. She graduated from high school and completed two years of college (Tr. 358). The claimant has past relevant work as a tire builder (Tr. 24). The claimant alleges that she has been unable to work since March 2, 2008, because of anxiety disorder, panic attacks, and post-traumatic stress disorder (PTSD) (Tr. 156).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on October 13, 2008. The Commissioner denied her applications. ALJ Michael A. Kirkpatrick held an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 2, 2010. The Appeals Council denied review, so this opinion is the Commissioner's final decision for purposes of appeal. 20 C.F.R. §§ 404.981; 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform work at all exertional levels (Tr. 15). The ALJ found, however, that the claimant's mental

impairments impacted her ability to work in the following ways: i) she has the ability to perform both simple, unskilled tasks and detailed, semi-skilled tasks, but not complex, skilled tasks and ii) she should have no interaction with the general public (Tr. 15). The ALJ concluded that the claimant was able to return to her past relevant work as a tire builder (Tr. 24). Thus, the ALJ concluded that the claimant was not disabled at step four (Tr. 24).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly analyze the "other source" opinion of mental health counselor Rochelle Bailey, LMSW, BHRSII, and (ii) by failing to properly analyze claimant's credibility. The undersigned Magistrate Judge finds that the ALJ erred by failing to properly analyze the medical evidence of record.

On September 29, 2008, the claimant was admitted for inpatient treatment at Red Rock Crisis Unit after experiencing suicidal thoughts following an incident in which her son held her hostage (Tr. 312). She was noted to be depressed, have a panic/anxiety disorder, and suspected to have bipolar disorder upon admission (Tr. 311). Following discharge from the Red Rock Crisis Unit on October 8, 2008, the claimant was referred to the Mental Health and Substance Abuse Centers of Southern Oklahoma, where she began seeing counselors and receiving treatment from Dr. Richard Zielinski, M.D. (Tr. 494).

At the request of her physician, the claimant was evaluated on April 3, 2009 by Dr. Robert Beck, Ph.D. who performed a battery of objective tests on claimant to assess

her mental functioning. Dr. Beck noted during the Mental Status Examination that claimant was disoriented in terms of location, and noted that there was evidence of a disturbance in executive functions and impaired attention (Tr. 359). Results from the MCMI-III profile suggested that claimant had "depressive and masochistic tendencies, along with antisocial and avoidant patterns" and thought disorder (Tr. 359). Further, Dr. Beck noted that the results showed that claimant "has structured defects, and experiences intense endogenous moods, with recurring periods of dejection, and apathy, often interspersed with spells of anger, euphoria, and anxiety" (Tr. 359). Further, the claimant's "significant elevation on the Major Depression scale suggests she is not capable of functioning independently" (Tr. 359). The claimant was also noted to have problems with memory, average intellect, and frontal lobe damage (Tr. 360-62). Dr. Beck stated that claimant's test results demonstrated a relatively severe mental illness and concluded his report with a dual diagnosis of Major Depression and Cognitive Disorders involving Immediate and Delayed Memory, as well as Concentration problems, with difficulties in self-management (Tr. 363). Finally, Dr. Beck also noted that claimant's prognosis was poor (Tr. 356).

      The claimant was also evaluated by Dr. Beth Jeffries, Ph.D. on April 27, 2009. Dr. Jeffries expressed skepticism regarding the claimant's statements about tactile obsessive compulsive disorder (OCD) but noted that there *was* evidence of bipolar disorder during the evaluation (Tr. 383). Dr. Jeffries also wrote that there was "likely [an] underlying characterlogical (sic) disorder as well that may be contributing to her

symptoms" which would make her "more treatment refractory" (Tr. 383). Dr. Jeffries also noted that the claimant's bipolar disorder "would make it difficult for her to perform in many occupational settings" (Tr. 383). Finally, Dr. Jeffries wrote the following:

> She is likely to have some oddities in her behaviors and in her thinking patterns resulting from her rapid cycling of moods that might make it difficult for her to interact socially and many occupations and to deal well with authority. It would also make it difficult for her to complete tasks or a typical workday. If she were to be awarded benefits [it] is likely that she would benefit from an overseer of those funds.

(Tr. 383).

The claimant's counselor, Rochelle Bailey, LMSW, BHRSII, wrote a letter and submitted a medical statement regarding the claimant's mental abilities and limitations to claimant's attorney on October 15, 2009. In her letter, Ms. Bailey described claimant's OCD symptoms, which included counting, rocking, foot movements, and finger and hand motions, and stated that the claimant "is not able to function well outside the home, concentrate or function independently" (Tr. 502). Further, Ms. Bailey stated that claimant exhibited the following signs and symptoms related to her mental impairments: i) generalized persistent anxiety accompanied by autonomic hyperactivity, apprehensive expectation, and vigilance and scanning; ii) a persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; iii) recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension; iv) recurrent obsessions or compulsions which are a source of marked distress; v) recurrent and intrusive recollections of a

traumatic experience, which are a source of marked distress; vi) marked restriction of activities of daily living; vii) marked difficulties in maintaining social functioning; and viii) marked difficulties in maintaining concentration, persistence, or pace (Tr. 503). The diagnoses included bipolar I disorder (most recent mixed severe without psychosis), PTSD, and OCD (Tr. 503). The form was signed off on by Dr. Richard Zielinski, M.D., the doctor who oversees claimant's mental health treatment and prescribes her medications (Tr. 503).

Ms. Bailey submitted another letter dated May 18, 2010 for the record which intended to provide more information related to the questionnaire she had previously submitted. Ms. Bailey wrote that the questions regarding the effect claimant's mental impairments have on her ability to work can be situational, and that claimant is unable to either carry out instructions on her own or maintain attention and concentration except for short periods of time unless it is a subject claimant is passionate about, in which case she will obsess over the subject (Tr. 504). Ms. Bailey noted that the claimant needs "extensive assistance by others to perform activities within a schedule, attend meetings, and to be punctual" and that she is easily distracted by simple things (Tr. 504). Ms. Bailey also included a medical statement concerning the claimant's depression with anxiety, OCD, PTSD or panic disorder for her Social Security disability claim. She wrote that claimant had numerous signs and symptoms, including, *inter alia*, sleep disturbance, decreased energy, feelings of guilt, apprehensive expectations, and recurrent obsessions or compulsions which are a source of marked distress (Tr. 506). Further, she

opined that claimant had extreme restriction of activities of daily living and marked difficulty in maintaining social functioning (Tr. 506). Ms. Bailey opined that claimant was extremely impaired in the following areas: i) ability to remember locations and work-like procedures; ii) ability to understand and remember short and simple instructions; iii) ability to understand and remember detailed instructions; iv) ability to carry out very short and simple instructions; v) ability to carry out detailed instructions; vi) ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; vii) ability to sustain an ordinary routine without special supervision; viii) ability to work in coordination with and proximity with others without being distracted by them; ix) ability to make simple work-related decisions; x) ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; xi) ability to interact appropriately with the general public; xii) ability to ask simple questions or request assistance; xiii) ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; xiv) ability to respond appropriately to changes in the work setting; xv) ability to be aware of normal hazards and take appropriate precautions; xvi) ability to travel in unfamiliar places or use public transportation; and xvii) ability to set realistic goals or make plans independently of others (Tr. 507-08).

The ALJ made several errors in his analysis of the October 15, 2009 and May 18, 2010 opinions submitted by claimant's mental health providers. First, the ALJ "noted"

that Dr. Zielinski had signed off on the October 15, 2009 opinion submitted by Ms. Bailey but apparently failed to consider whether Dr. Zielinski agreed with those findings. Instead, he considered and analyzed both opinions as though they were "other source" opinions under 20 C.F.R. §§ 404.1513, 416.913. In this case, the ALJ should not have merely speculated as to whether the opinions expressed in the October 15, 2009 medical source statement were, in fact, Dr. Zielinski's opinions. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("In this case, the ALJ's unfounded doubt that Dr. Luc agreed with the assessment he signed, in the face of unrefuted evidence to the contrary, was error."). If the opinions expressed in the October opinion *did* constitute Dr. Zielinski's opinions, then it should have been analyzed as a treating physician opinion under the factors set out in 20 C.F.R. §§ 404.1527; 416.927.

Second, the ALJ discredited both opinions because he found that that the opinions "merely parrot[ed] back the claimant's allegations, which I do not find credible" (Tr. 21). This was error. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*" *McGoffin*, 288 F.3d at 1252, [quotation omitted] [emphasis in original].

Finally, the ALJ discredited the opinions because they were "not supported by the objective medical evidence of record" (Tr. 21). In making this finding, it is apparent that the ALJ wholly ignored certain probative findings of Dr. Robert Beck and Dr. Beth

Jeffries. With respect to Dr. Beck, the ALJ failed to discuss his findings, which *were* based on objective testing, that claimant was likely unable to function independently, had a poor prognosis, and demonstrated a severe mental illness (Tr. 356, 359, 363). With respect to Dr. Jeffries, the ALJ ignored her findings, which were also based on objective testing, that claimant's probable underlying characterological disorder would make her treatment refractory (or resistant to treatment), that claimant's symptoms of bipolar disorder would make it difficult to her to perform in many occupational settings, that she would have difficulty interacting socially and dealing with authority, and that claimant would find it difficult to complete tasks *or* a typical workday (Tr. 383). The ALJ also ignored that Dr. Jeffries also opined that claimant would be incapable of managing funds on her own behalf (Tr. 383). "'[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.'" *Taylor v. Schweiker*, 739 F.2d 1240, 1243 (7th Cir. 1984), *quoting Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982). *See also, Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004).

Because the ALJ failed to properly analyze the medical evidence of record as outlined above, the undersigned Magistrate Judge concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis of the medical evidence of record. If the ALJ's subsequent analysis results in any

changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied and the decision of the Commissioner is therefore not supported by substantial evidence, and accordingly RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED to the ALJ for further proceedings consistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 12th day of September, 2012.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma